## LORENZEN v. UNITED STATES.

No. 6864.

District Court, W. D. Missouri, W. D.

April 10, 1930.

Allen McReynolds, of Carthage, Mo. (R. A. Mooneyham, of Carthage, Mo., on the brief), for plaintiff.

Harry L. Thomas, Asst. U. S. Atty., of Kansas City, Mo. (Wm. L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

OTIS, District Judge.

Plaintiff brings this action to recover from the United States the sum of $54,117.-12, alleged by him to have been unlawfully collected September 21, 1920, as a tax upon 8,455.8 gallons of whisky which had been stored at a government warehouse at Liberal, Mo., and had previously been manufactured by the Pure Grain Distilling Company, a Missouri corporation. The tax was assessed upon the theory that the whisky in question had been removed from the government warehouse for beverage purposes, and that section 600(a) of chapter 18 of the Act of February 24, 1919 (40 Stat. 1105 [26 USCA § 245 note]) authorized the tax. That section reads as follows:

"That there shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States, except such distilled spirits as are subject to the tax provided in section 604, in lieu of the internal-revenue taxes now imposed thereon by law, a tax of $2.20 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $6.40) on each proof gallon, or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law."

1. A number of questions are involved in the case. Among others, and the first which I shall consider in this memorandum, is whether, as the plaintiff here contends, the National Prohibition Act (27 USCA) by necessary implication repealed section 600(a), chapter 18 of the Act of February 24, 1919. In connection with that question it is necessary carefully to consider what was held by the Supreme Court in Regal Drug Corp. v. Wardell, 260 U. S. 386, 43 S. Ct. 152, 153, 67 L. Ed. 318.

The Regal Drug Corp. Case cannot be entirely understood without a consideration of the same case, as it was decided in the Court of Appeals for the Ninth Circuit, 273 F. 182, 186. It appears from the opinion of the Court of Appeals that the facts were, in part, as follows: The Regal Drug Corporation had withdrawn from a government warehouse distilled spirits in the amount of $17,900. The spirits were withdrawn presumably for nonbeverage purposes. All taxes required by law where spirits are withdrawn for such nonbeverage purposes were paid. After withdrawal the spirits were sold by the Regal Drug Corporation and a tax in the amount of $6.40 per gallon was then levied on that corporation on the theory that the spirits in question had really been withdrawn for beverage purposes. That tax was levied under the provisions of section 600(a). The collector of internal revenue took possession of plaintiff's property by distraint and was threatening to sell that property to satisfy the claim of the government when the plaintiff filed an injunction to enjoin such sale. The injunction was denied on the ground that the plaintiff had an adequate remedy at law. The Court of Appeals did not pass on the contention that the tax was wrongfully assessed, but thus stated the contention as it was made by the plaintiff:

"The appellant contends that, as the Eighteenth Amendment and the statute passed for its enforcement prohibits absolutely the manufacture and sale of intoxicating liquors and wines for beverage purposes, the provisions of the prior law inconsistent with the constitutional enactment and the enforcing statute have been repealed, and there can be no tax assessed or imposed on such liquors and wines; in other words, there can be no legal tax, so it is contended, upon that which cannot be legally manufactured or sold, and that if manufactured or sold illegally, the liability of the offender is for a penalty, and not for a tax, and if it is for a penalty its collection must be enforced by proceedings in court and not by the summary proceedings of an assessment."

When the case reached the Supreme Court the case of Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061, had been decided in which it had been held that a penalty, although called a tax, such as imposed in section 35 of title 2 of the National Prohibition Act (27 USCA § 52), could not be collected by the ordinary method of assessment and distraint, but only after notice and an opportunity to be heard. In view of that decision the government conceded that penalties and double taxes could not be collected otherwise than after notice and hearing, where evidence of crime was essential to the collection of the penalty or tax. However, seeking to distinguish the case of Lipke v. Lederer, it was contended by the government (see government's brief, 260 U. S. 386, 43 S. Ct. 152, 67 L. Ed. 318):

"That under tax laws which antedated the National Prohibition Act, and which were expressly retained under that act, the Commissioner of Internal Revenue properly levied taxes (not double taxes) on the distilled spirits and wines used for beverage purposes, and the Collector of Internal Revenue properly sought to collect such taxes by distraint proceedings. * * * There is nothing in Lipke v. Lederer * * * which shows that pre-existing taxes may not be collected in the manner in which such taxes had been collectible."

But the Supreme Court rejected the contention made by the government. Referring to and interpreting its prior decision in Lipke v. Lederer, it said:

"The distinction between a tax and a penalty was emphasized. The function of a tax, it was said, 'is to provide for the support of the government'; the function of a penalty clearly involves the 'idea of punishment for infringement of the law,' and that a condition of its imposition is notice and hearing. * * * And even if the imposition may be considered a tax, if it have punitive purpose, it must be preceded by opportunity to contest its validity. * * *

"We took pains to say that 'evidence of crime * * * is essential to assessment under section 35,' and that we could not 'concede, in the absence of language admitting of no other construction, that Congress intended that penalties for crime should be enforced through the secret findings and summary action of executive officers. The guarantees of due process of law and trial by jury are not to be forgotten or disregarded. *. * *'

"The comment and decision are applicable here, and decisive. The government concedes that the case is conclusive against the 'penalties and double taxes,' but contends that *under tax laws which antedated the National Prohibition Act, only inconsistent laws are repealed, and that taxes in this case were levied under a law not inconsistent. For this section 35 is adduced. Lipke v. Lederer manifestly precludes the contention.*"

I cannot interpret this language of the Supreme Court but as holding that section 600(a), in so far as it imposed a tax for the removal of distilled spirits, is inconsistent with the National Prohibition Act and, therefore, to that extent repealed by that act.

The government had contended that tax laws which antedated the National Prohibition Act (and, of the laws in question, section 600(a) was one) were not inconsistent with the National Prohibition Act. The court said that Lipke v. Lederer manifestly precluded the contention. If so, section 600(a) is inconsistent with the National Prohibition Act and would be repealed by the very terms of that act. The reasoning of the Supreme Court was that it was not the intention of Congress to preserve a penalty imposed by a former internal revenue law for the same act for which a penalty was imposed by the National Prohibition Act. And it was the view of the Supreme Court that if what in the original act was in reality a tax, as it was then intended, had a punitive purpose as enforced after the National Prohibition Act, then it is a penalty and as such superseded by the penalties provided for in the National Prohibition Act.

The removal of distilled spirits for beverage purposes from a distillery necessarily involves the transportation of such distilled spirits and is certainly a crime under the National Prohibition Act for which, in that act,

a penalty is provided. To impose a tax because of such removal, a necessarily unlawful removal, is to impose a penalty. Certainly it has a punitive purpose and effect. That the enforcement of a law having such a result is inconsistent with the National Prohibition Act seems to me to be a conclusion that must be drawn from the decision of the Supreme Court in this case.

2. A second contention made by the plaintiff is that under the facts here the assessment of the tax was made unlawfully for the reason that the distilled spirits claimed to have been withdrawn (and, therefore, subject to the tax) were not "withdrawn" within the meaning of that word as it is used in section 600(a). That contention is based upon the theory that the distilled spirits in question were not withdrawn at all by the taxpayer or their owner but, without connivance or negligence on his part, were surreptitiously withdrawn from the government warehouse in the nighttime by thieves.

At the trial evidence was heard upon this issue. Plaintiff introduced evidence tending to show that he, as the owner of the distilled spirits here involved, did not withdraw them, did not authorize any other to withdraw them, did not connive with others that they be withdrawn, and used due diligence to prevent their withdrawal by unauthorized individuals. The government introduced evidence with the purpose of showing guilty knowledge or participation on the part of plaintiff in the withdrawal of the distilled spirits. Without detailing this testimony, it is sufficient to say that upon the testimony which was introduced (and, of course, nothing else can be considered) plaintiff fully sustained the burden of proof which was on him to show and he did show that the distilled spirits in question here were stolen from the government warehouse without any connection on his part, either actively or negligently, with the theft, and I find the fact to be that the distilled spirits were stolen by thieves with whom and with whose theft plaintiff had no connection, and that he was not negligent in the performance of any duty imposed on him (if any duty was imposed on him) to prevent theft.

But it is the contention of the government that the spirits were withdrawn for beverage purposes within the meaning of the statute, even if they were withdrawn by thieves, and even if the plaintiff was wholly innocent of any wrong doing in that connection. The government relies upon a literal construction of the language in the statute which is that if distilled spirits are "withdrawn for beverage purposes" they shall be subject to the tax provided for. The government contends that the facts indicate that these distilled spirits were withdrawn for beverage purposes, and it is true that it is a reasonable inference from the facts that they were withdrawn for beverage purposes. I cannot agree with the contention, however, that they were withdrawn within the meaning of that word as it is employed in the statute. It is an unreasonable and unjust interpretation of the statute to say that the taxpayer is to be penalized for what was not his voluntary act but because of the criminal act of some other.

So far then my conclusions are, first, that this tax was unlawfully assessed because of the repeal by implication of the statute under which it was levied and, second, that because the distilled spirits, on account of the alleged withdrawal of which the tax was levied, were not withdrawn within the meaning of the statute.

3. But there are other questions which must be determined in this case. Indeed, it is the earnest contention of the government that the questions thus far considered are not really before the court because of matters which the government contends preclude their consideration. I take up these other questions in the order in which the government has presented them.

It is insisted by the government that the plaintiff does not have capacity to maintain this action. The following facts are the basis of this insistence: The Pure Grain Distilling Company which originally owned the distilled spirits involved in this case, and against which the tax was assessed, was originally a Missouri corporation. Its charter was forfeited by the secretary of state of the state of Missouri on January 1, 1920, for failure to comply with certain provisions of the Missouri law relative to corporations. Reinstatement of its charter never was effected. When the tax was assessed it was in this suspended situation, plaintiff, who had been the president and managing officer of the corporation, being then the owner of all the stock of the corporation, and there being against it no outstanding and unpaid claims whatever, with the exception of the government's tax claim here in controversy.

The contention of the government is that this suit could be maintained by the plaintiff only in a representative capacity, as a trus-

tee, and that it cannot be maintained in his individual capacity as it has been brought.

Section 9816 of the Revised Statutes of Missouri, 1919, provides that officers, directors and managers of corporations after forfeiture become trustees "with full power to settle its affairs and distribute its assets among its stockholders, after paying the debts due and owing by such corporation, and as such trustees to sue and recover debts and property due such corporation, and they shall be jointly and severally responsible to the creditors and stockholders of such corporations to the extent of its property and assets that may properly come into their hands."

Undoubtedly, by virtue of this statute, plaintiff, at the date of forfeiture, since he was then the sole stockholder, officer, and manager of the corporation, became entitled as trustee to bring the suit which he has brought in his individual name. It may be doubtful if he was authorized to bring such a suit otherwise than as trustee, since it is doubtful if section 1156 of the Revised Statutes of Missouri for 1919 applies. That section reads:

"An executor or administrator, or a trustee of an express trust, or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another."

Plaintiff is not a trustee of an express trust. Perhaps he may sue in his own name, although I think that is to be doubted, by reason of the phrase in the statute quoted, "a person expressly authorized by statute." I think, however, it is not important to determine that question. Certainly the plaintiff as trustee could have brought this suit in the interest of the beneficiaries of the trust, and he in his individual capacity was the only beneficiary, and if necessary now he may amend by setting out in his petition the true character in which he sues. Missouri, K. & T. R. Co. v. Wulf, 226 U. S. 570, 576, 33 S. Ct. 135, 57 L. Ed. 355.

The facts in this case indicate that when the tax here involved was collected plaintiff fully advised the government of the suspended status of the corporation and was in turn advised that he individually should pay the tax, but in the name of the corporation, and that in the same name he might make claim for a refund. The government cannot now with much grace set up as against his claim this very technical objection. The point is resolved in favor of the plaintiff.

■ 4. The government contends that the only right to a refund of taxes which the plaintiff has, if any, is under the provisions of section 3221, Rev. St., as amended (26 USCA § 151), which is:

"The Secretary of the Treasury, upon the production to him of satisfactory proof of the actual destruction by accidental fire or other casualty, and without any fraud, collusion, or negligence of the owner thereof, of any distilled spirits, while the same remained in the custody of any officer of internal revenue in any distillery warehouse, or bonded warehouse of the United States, * * * and before the tax thereon has been paid, may abate the amount of internal taxes accruing thereon, and may cancel any warehouse bond, or enter satisfaction thereon, in whole or in part, as the case may be. And if such taxes have been collected since the destruction of said spirits, * * * the said Secretary shall refund the same to the owners thereof out of any moneys in the Treasury not otherwise appropriated. And when any distilled spirits are destroyed by accidental fire or other casualty, without any fraud, collusion, or negligence of the owner thereof, after the time when the same should have been drawn off by the gauger and placed in the distillery warehouse provided by law, no tax shall be collected on such spirits so destroyed, or, if collected, it shall be refunded upon the production of satisfactory proof that the spirits were destroyed as herein specified."

And it is the further contention of the government that the decision of the Secretary of the Treasury as to whether there may be a refund of taxes under this statute is final unless in an action brought in court it is both pleaded and proved that the decision of the Secretary of the Treasury was unreasonable, arbitrary, and capricious. In the present case nothing of that kind was either pleaded or proved by the plaintiff.

The contention of the government is right to this extent: An action for a refund of taxes because of the destruction of distilled spirits by fire or other casualty cannot be maintained unless it is first shown that an application for a refund was made to the Secretary of the Treasury and was rejected by him arbitrarily, unreasonably, and ca-

priciously, but the section relied on must be restricted in its application to the limited purpose which its language indicates. Obviously, I think, it has no application to an application for a refund not made because of destruction of distilled spirits by fire or other casualty, but made upon the ground that the tax was in the first instance levied unlawfully in that it was levied upon the theory that spirits were withdrawn, when in fact they were not withdrawn, or upon the ground that the law by which the tax originally was authorized had been repealed. Where a refund is sought upon these grounds, or either of them, the general law applies as set out in section 3220, Rev. St., as amended (26 USCA § 149) as follows:

"Except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes, the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; also to repay to any collector or deputy collector the full amount of such sums of money as may be recovered against him in any court, for any internal-revenue taxes collected by him, with the cost and expense of suit. * * * "

I do not overlook in this connection that in part, as set up in his second amended petition, the plaintiff does seek a refund under the provisions of section 3221 upon the ground that the distilled spirits in question were destroyed by accidental fire without knowledge, negligence, consent, collusion, or fraud of the plaintiff. If that were the only basis for the plaintiff's claim, it should be rejected in the absence of some showing that refund was sought from the Secretary of the Treasury and was arbitrarily and capriciously and unreasonably refused by him. But that is not the only ground upon which recovery is sought in this case.

■ 5. It is urged that the second amended petition seeks recovery upon grounds different than those which were presented to the Commissioner of Internal Revenue when claims were filed with him. Two claims were filed. The first asked for a refund on three grounds, that the distilled spirits were destroyed by fire, that if the spirits were removed by theft it was without the knowl-

edge or any connection on the part of the owners, and that the National Prohibition Act in effect had repealed the taxing statute. The second claim for refund set up only as a ground therefor that the spirits had been destroyed by fire. Both claims were considered and rejected by the Commissioner. I think there is little, if any, force in the government's contention that by the filing of the second claim the first claim was abandoned, especially in view of the fact that the final rejection referred to both claims and denied a refund on account of either of them. While the law is that an action brought in court must be upon the same grounds as those which were presented in claims filed with the Commissioner (Tucker v. Alexander (8 C. C. A.) 15 F.(2d) 356), the requirements of that rule are fully met in this case, particularly in view of the language in Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 46, 72 L. Ed. 253 (reversing the Court of Appeals in the same case, but not on the ground that the rule was incorrectly stated), in which the Supreme Court said, referring to the requirement that a claim be filed with the Commissioner:

"The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitations. If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings."

Certainly here, where it is conceded that the claim as presented to the court was identical with the claim presented in the first instance to the Commissioner, it cannot be said that the Commissioner was "deceived or misled" by the failure to incorporate in the second claim all that was in the first, especially when in his letter of rejection the Commissioner clearly indicated that both claims were considered and disapproved by him. This point must be resolved against the government.

6. The contention of the government that deserves especially serious consideration, however, is that plaintiff's action is barred by the statute of limitations. The applicable limitations statute is section 3226, Rev. St., as amended (26 USCA § 156), which is as follows:

"No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. *No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail.*"

The tax involved in this case was paid September 21, 1920. Claims for refund were rejected November 16, 1923. The original petition in this case was filed July 26, 1924. The first amended petition was filed February 28, 1927, and the second amended petition was filed September 22, 1928. So that the original petition was filed within five years from the date when the tax was paid, and also within two years from the date when the claims for refund were disallowed.

But the contention of the government is that, although the original petition was filed within the statute of limitations, the second amended petition, upon which this case was tried, stated an entirely distinct and different cause of action than that stated in the original petition, and was not filed within the time allowed by the statute of limitations.

It is undoubtedly the law that, although a cause of action is instituted within the time provided for in the statute of limitations, an amendment to such cause of action which states a new and different cause of action, unless the amendment is also within the time provided for in the statute, cannot be maintained. It is barred by the statute of limitations. The rule is, so it is stated in 37 C. J. 1074, "that an amendment which introduces a new or different cause of action and makes a new or different demand does not relate back to the beginning of the action, so as to stop the running of the statute of limitations, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed."

One of the most illuminating cases discussing this rule is Union Pacific Railroad Co. v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 879, 39 L. Ed. 983. In that case the Supreme Court stated the rule and in reference to it said:

"The legal principles by which this question must be solved [that is, as to whether an amended petition presents a new cause of action] are those which belong to the law of departure, since the rules which govern this subject afford the true criterion by which to determine the question whether there is a new cause of action in case of an amendment. In many of the states which have adopted the code system great latitude has been allowed in regard to amendment; but even in those states it is held that the question of what constitutes a departure in an amended pleading is nevertheless to be determined by the rules of common law, which thus furnish the test for ascertaining whether a given amendment presents a new cause of action, even although it be permissible to advance such new cause, by way of an amendment."

The general principle as thus stated the court amplified by citations to numerous cases and quotations from various text writers, including this quotation from Stephen on Pleading:

"But it is also a departure if he (the pleader) puts the same facts *on a new ground in point of law;* as if he relies on the effect of the common law, in his declarations, and on a custom in his replication; or on the effect of the common law in his plea, and a statute in his rejoinder."

The court also quoted with approval from Chitty on Pleading as follows:

"A departure may be either in the substance of the action or defense, *or the law on which it is founded;* as if a declaration be founded on the common law, and the replica-

tion attempt to maintain it by a special custom, or act of parliament."

These principles were applied by the court in the case, and it was held that, where an original petition proceeded under the general law of master and servant, and an amended petition proceeded upon a statutory right of recovery for personal injuries, a new cause of action was stated by the amended petition, which was barred by the statute of limitations.

The case of Seaboard Air Line Railway Co. v. Renn, 241 U. S. 290, 36 S. Ct. 567, 60 L. Ed. 1006, which plaintiff cites in this connection, unqualifiedly reaffirms the general rule.

In a very early case, which, however, is especially authoritative for the reason that the opinion was written by Mr. Justice Story sitting as circuit justice, the case of The Harmony, 11 Fed. Cas. page 556, No. 6,081, in which in an original petition the plaintiff (the government was the plaintiff) stated a cause of action founded on section 50 of the Revenue Act of March 2, 1799 (1 Stat. 665). The plaintiff sought leave to amend by inserting a new count founded on section 28 of the same act (1 Stat. 648). Meanwhile the statute of limitations had run. Justice Story, in overruling the motion to amend, said:

"It has been further objected, that such amendments ought not to be allowed, because the statute of limitations has actually run against the forfeiture; and it would be in effect reviving a new right of action, which in an original information would be barred. That the statute of limitations' would run against a cause of action then before the court, has been held a good reason for allowing an amendment, as to such cause of action. (citing cases) *But in such cases, the court will not admit an amendment, if it be to introduce a new substantive cause of action, or new charge against the defendant. (citing cases) Now I think this rule a perfectly reasonable one, and I shall adhere to it in this case. The amendment must be disallowed, because the cause of action would be gone on an original information; and it is clearly a new substantive charge.*"

▉ Now, the original petition here seeks recovery of the tax paid only upon one ground. The petition alleges:

"That no tax was due or has since become due, upon said distilled spirits and the collection of said tax aforesaid by said collector was and is illegal and wrongful, *for the reason that said distilled spirits were actually*

destroyed by accidental fire while in a United States Distillery Warehouse in the exclusive control, custody and care of the United States of America through said revenue officers aforesaid, and without any fraud, collusion or negligence of the plaintiff.*"

I think the cause of action thus stated obviously was based on section 3221, Rev. St. There is no other section in the statutes which authorizes recovery of a tax on the ground of destruction of distilled spirits by accidental fire excepting this one section. The petition follows the exact language of the section in alleging that the distilled spirits in question were "destroyed by accidental fire * * * without any fraud, collusion, or negligence of the owner [plaintiff]." No reference of any kind in the original petition was made to any claim for a refund of the tax paid on the ground that distilled spirits had not been "withdrawn" within the meaning of that term, as used in section 3221, or that the statute providing for the assessment of the tax had been impliedly repealed by the National Prohibition Act. In other words, the original petition cannot be construed as having been based upon the general law as well as upon section 3221. It seeks to recover only under that section. That would not be true if the original petition had alleged only "that no tax was due or has since become due upon said distilled spirits and the collection of said tax aforesaid by said collector was and is illegal and wrongful." Under such a general allegation, of course, any amendment might thereafter have been made setting up any specific ground of illegality in the assessment and collection of the tax, whether that ground was based upon some specific statute, upon the general law, or upon the alleged unconstitutionality of the statute under which the tax was assessed. Unfortunately, from the plaintiff's standpoint, the general language first used was restricted by what in effect was a specific reference to the particular statute upon which the plaintiff relied, and by a specific assertion of the legal ground upon which he based his claim for recovery.

The second amended petition certainly states a new and distinct cause of action, because it is based upon the general law. Perhaps more accurately it should be said that the second amended petition, in addition to the cause of action set up in the original petition, states other and distinct causes of action which were not included in the original petition. If the plaintiff is entitled to any recovery at all in this case it is upon these new and distinct causes of action, and not up-

on that set up in the original petition. Such new and distinct causes of action are barred by the statute of limitations.

It is not important to consider whether the second amended petition upon which the case was tried was a departure also from the first amended petition, since the first amended petition itself was filed more than five years after the tax was paid.

 I have said that the applicable limitations statute is section 3226. That has been questioned by the plaintiff. The point merits consideration.

The question is justified by the ambiguous language used in this section. It provides that no suit shall be begun "after the expiration of five years from the date of payment of such tax," which is clear enough, but this language follows: "Unless such suit or proceeding is begun within two years after the disallowance" by the Commissioner.

Is it to be inferred from this clause, beginning with the word "unless," that, if a suit is begun within two years after the Commissioner's disallowance, the five-year statute does not apply? That is a possible construction. But I think it is not the right construction to be placed on this clause, when it is read in connection with the whole section.

A disallowance or its equivalent is a prerequisite to any suit. It is certainly to be supposed that almost every case that is brought to recover taxes will be brought within two years of disallowance. So that if that fact wipes out the five years' limitation, that limitation is of such restricted applicability as to be almost without value or significance. But obviously it was intended to be the general rule. The "unless," etc., clause was to take care of exceptional instances in which the general rule would work injustice, as, for example, where the Commissioner has so delayed his decision as that all or most of the five years have gone before the claimant can institute his suit. Was it not the intention of the Congress that a claimant in every instance should have two years after disallowance in which to sue even if that meant his suit might be instituted more than five years from the payment of the tax, but that otherwise his suit must be brought within five years from the tax payment date? In my view that is the right construction.

But whether that is or is not the right construction of the "unless," etc., clause, the five years' limitation applies here. A suit was instituted by this plaintiff within two years of disallowance, but *this* suit was not. I have found that the second amended petition stated an entirely different cause of action than did the original petition. It was then a *different* suit. And it was not begun until nearly five years after disallowance. *Even* the first amended petition was not filed until more than three years after disallowance.

7. Conclusion. I have thus considered all of the questions which are involved in this case. I have resolved all of these questions in favor of the plaintiff excepting one which I have decided in favor of the government, to wit, that this action is barred by the statute of limitations. Judgment must be and is for the defendant. A decree may be prepared and submitted accordingly.